IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

SUN LIFE ASSURANCE
COMPANY OF CANADA (U.S.), PLAINTIFF

VS. CIVIL ACTION NO. 2:06CV210KS-JMR

HELEN M. FAIRLEY DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This cause is before the court on defendant's motion to dismiss. From its review of all matters made a part of the record of this case as well as applicable law, and being thus fully advised in the premises, the court FINDS that the motion is not well taken and should be denied. The court specifically finds as follows:

FACTUAL BACKGROUND

On or about October 24, 2000, defendant Helen M. Fairley and her husband, Maurice H. Fairley, deceased, applied for a "MFS Regatta Extra" variable, non-qualified, annuity with plaintiff Sun Life Assurance Company of Canada ("Sun Life"), to be purchased through AmSouth Investment Services ("AmSouth"). Pursuant to the application, Mrs. Fairley and her husband were to be the Annuitants/Owners of the contract and the primary beneficiary of the contract was to be the last surviving spouse between the two of them.

On October 26, 2000, an annuity contract was issued to the Fairleys pursuant to their

application (the "Annuity"). The Fairleys invested $121,368.90.[1]

On January 5, 2005, the Fairleys signed and submitted a "Beneficiary Designation Form" naming Carol L. Carlisle, the Fairleys' daughter, and Ronald M. Fairley, their son, as the primary beneficiaries of the Annuity.

Maurice H. Fairley died on February 7, 2005. On March 30, 2005, Mrs. Fairley submitted a death claim to Sun Life requesting that the Annuity be liquidated without surrender charges and the proceeds be forwarded to her agent, Edward Jones Investments. On April 27, 2005, Sun Life responded to Mrs. Fairley's claim, noting that because she was not the beneficiary of the Annuity, disclaimers had to be obtained from the beneficiaries. On June 3, 2005, Mrs. Fairley's attorney, Lawrence C. Gunn, Jr., Esq., wrote Sun Life on behalf of Mrs. Fairley requesting again that the Annuity be liquidated and the proceeds be forwarded to Mrs. Fairley. On June 16, 2005, Sun Life responded to Mr. Gunn's letter reiterating the reason why it could not proceed with the request.

Multiple communications took place between Mr. Gunn and Sun Life and on March 24, 2006, Mr. Gunn provided Sun Life with the requested beneficiary disclaimers. That day, Sun Life provided Mr. Gunn with the claim packet to be completed by Mrs. Fairley. Mr. Gunn returned the completed forms to Sun Life on April 11, 2006 and requested that Sun Life pay an

---

[1] According to Mrs. Fairley, Richard P. Moore, the banker at AmSouth who sold the Fairleys the Annuity, told them that because of the size of the investment they were making, they would be entitled to an additional 4% to be added on to the principal amount of the Annuity. Mr. Moore also allegedly told the Fairleys that the Annuity for which they had applied would contain an earnings enhancement rider which would provide that even if the market value of the Annuity should be less than the initial investment plus the additional 4% bonus, that upon the death of either of them Sun Life would pay the total value of $126,223.44. On October 27, 2000, the Fairleys were given a confirmation statement reflecting the total value of the Annuity they purchased as $126,223.44.

additional 8% interest for the delay in processing Mrs. Fairley's claim - for a total of $136,321. On May 23, 2006, $124,807.54 was wired to Mrs. Fairley's Edward Jones Account, consisting of the proceeds of the Annuity ($122,368.70) plus interest on the death benefit, calculated retroactively from April 4, 2005 through May 22, 2006, at a rate of 2.5% ($3,438.84). Thereafter, Mr. Gunn sent a letter to Sun Life on May 25, 2006, indicating that Mrs. Fairley did not agree that the amount of money wired to her was correct and that she intended to file suit against Sun Life "for the sum is [*sic*] rightly due." Mr. Gunn stated: "Do not consider her retention of the money in her account as any sort of acquiescence or agreement to what is stated in your letter of May 18."

Sun Life filed a declaratory judgment action in this court on September 16, 2006.[2] On March 13, 2007, Mrs. Fairley filed suit against Sun Life in the County Court of Forrest County based on the Annuity (the "State Court Action"). In her complaint (the "State Court Complaint"), Mrs. Fairley expressly stated that "[t]he amount in controversy in this case is less than $75,000, exclusive of interest and costs." Elsewhere in the State Court Complaint, it is reiterated that Mrs. Fairley is limiting her claims to less than $75,000.00 and that even if she were to win a larger verdict, she would not accept it. The "Wherefore" clause of the State Court Complaint demands judgment in the amount of $13,657.00 plus interest of $2.90 a day after September 23, 2006, plus punitive damages and attorneys' fees, for a total of $74,999.00

---

[2] Nevertheless, discussions among the parties' attorneys continued. On September 19, 2006, three days after the instant action was filed, Mr. Gunn sent a letter to Sun Life in which stated that Mrs. Fairley was owed $13,657.00, plus punitive damages and attorneys' fees. In that letter, Mr. Gunn made a settlement offer of $53,657.00 and stated that he was prepared to file a complaint if the matter was not concluded by the end of the month. Mr. Gunn noted that he did "not think a Forrest County jury will have any hesitation in awarding punitive damages against Sun Life."

(exclusive of post-judgment interest and costs).

Mrs. Fairley moved to dismiss the complaint in the instant action on March 14, 2007, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, on the ground that this court lacks subject matter jurisdiction. Specifically, Mrs. Fairley argues that the amount in controversy requirement of 28 U.S.C. § 1332 has not been met. In connection with her motion to dismiss, Mrs. Fairley filed a stipulation with this court that she was limiting the total value of her claims against Sun Life to below $75,000.00, exclusive of interest and costs, and that she would not accept a verdict for more than $74,999.00. That same day, Mrs. Fairley filed an identical stipulation in the State Court Action.

ANALYSIS

Sun Life, as the party invoking this court's subject matter jurisdiction, bears the burden of establishing the amount in controversy by a preponderance of the evidence. *Hartford Ins. Group v. Lou-Con, Inc.*, 293 F.3d 908, 910 (5th Cir. 2002) (*per curiam*). In determining the amount in controversy, this Court must engage in a two-step process: first, it must examine the complaint to determine whether it is "facially apparent" that the claim exceeds the jurisdictional minimum; second, if it is not facially apparent, the Court may turn to "summary judgment-type" evidence to aid in its inquiry. *Id.* at 910.[3] A court determines if the amount in controversy is facially apparent simply by examining the complaint and ascertaining whether the amount in controversy is "likely" to exceed $75,000. *Barsell v. Unumprovident Corp.*, 2001 WL 1530342, at * 1 (N.D.

---

[3] Although most of the caselaw regarding Section 1332's amount in controversy requirement has arisen in the context of removal from state to federal court, the Fifth Circuit has indicated that the "procedures developed in those cases [are] instructive in the converse context of declaratory judgment actions" originally filed in federal court. *St. Paul Reins. Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

Miss. Oct. 25, 2001) (*citing Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995)). In conducting this analysis, the court may refer to the types of claims alleged by the plaintiff, as well as the nature of the damages sought. *Id.* (*citing Allen*, 63 F.3d at 1336). Furthermore, in a declaratory judgment action, "the amount in controversy is 'the value of the right to be protected or the extent of the injury to be prevented.'" *Hartford*, 293 F.3d at 910 (*citing Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983)).

In its complaint, Sun Life avers that it paid Mrs. Fairley $124,807.54 (the death benefit due under the Annuity - $121,368.70, plus interest at a rate of 2.5%), on May 23, 2006 and that Mrs. Fairley indicated that she "did not agree that the amount of money wired to her was correct and that she intended to file suit against Sun Life for the sum she believed to be rightly due." Sun Life avers that prior to providing the disclaimers, Mrs. Fairley's attorney had requested that Sun Life pay Mrs. Fairley the death benefit, plus 8% interest, but Sun Life had refused.

Based on this court's reading of the complaint, there are two possible interpretations of the value of Mrs. Fairley's claim: either it is the total sum Mrs. Fairley believed to be due or, instead, it is the difference between the amount Mrs. Fairley was actually wired and the amount she believed to be due. Under either interpretation, it is likely that the jurisdictional minimum would be met because the complaint requests a declaration that, *inter alia*, Sun Life is not liable under the Annuity contract for the payment of any additional sums, and is not liable for punitive or other damages or for any fees. It is well-settled that claims for punitive damages are included in calculating the amount in controversy. *Brasell*, 2001 WL 1530342, at * 2 (*citing St. Paul Reins. Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *Myers v. Guardian life Ins. Co.*, 5 F.Supp. 2d 423, 428-29 (N.D. Miss. 1998)); *see also Atlanta Cas. Co. v. Jones*, 1991 WL

701089, at * 2 (S.D. Miss. Feb. 11, 1991).[4] As noted in *Brasell*, federal courts in Mississippi have consistently held that a claim for an unspecified amount of punitive damages is deemed to exceed the federal jurisdictional minimum. *Id.* (*citing St. Paul*, 134 F.3d at 1255; *Marcel v. Pool Co.*, 5 F.3d 81, 84-85 (5th Cir. 1993); *Allstate Ins. Co. v. Hilbun*, 692 F.Supp. 698, 701 (S.D. Miss. 1988)). In addition, if a state statute provides for attorneys' fees, such fees are considered by the court in determining the amount in controversy. *See Manguno v. Prudential Property & Cas. Ins. Co.*, 276 F.3d 720, 723(5th Cir. 2002); *Foret v. S. Farm Bureau Life Ins. Co.*, 918 F.2d 534, 537 (5th Cir. 1990). Mississippi statute provides for a discretionary award of attorneys' fees where, *inter alia*, a party brings an action or asserts a claim or defense "that is without substantial justification." Mississippi Code Annotated § 11-55-5.

Although the court finds that it is facially apparent that the amount in controversy requirement is likely met, even if this court analyzed summary judgment-type evidence, it would reach the same conclusion. The only such evidence the court can consider are documents that pre-date the filing of the complaint, as "jurisdictional facts must be judged as of the time the [federal] complaint is filed; subsequent events cannot serve to deprive the court of jurisdiction once it has attached." *Greenberg*, 134 F.3d at 1252-54; *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289-90 (1938) ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction."). On April 11, 2006, Mr. Gunn wrote to Sun Life stating that the amount she believed should be wired to her account was $136,321. And on May 25, 2006, Mr. Gunn wrote to Sun Life stating that Mrs. Fairley did not agree with the amount that had been wired and that "she intend[ed] to

---

[4] Punitive damages are authorized under Mississippi Code Annotated § 11-1-65.

file a lawsuit...for the sum rightfully due." Mr. Gunn further notified Sun Life that it was not to "consider her retention of the money in her account as any sort of acquiescence or agreement to what [was] stated in [Sun Life's] letter of May 18, [2006]." In other words, Mrs. Fairley appears to have been threatening to sue for the $136,321.00 she claimed she was due, which would put the burden on Sun Life to prove payment as an affirmative defense. *See* FED. R. CIV. P. R. 8(c).

Mrs. Fairley argues that the court should consider her State Court Complaint , the stipulations she filed with this court and in the State Court Action where she stated that she was limiting her damages to less than $75,000.00 and would not accept a damages award in excess of $75,000.00, and Mr. Gunn's September 19, 2006 letter in which a settlement offer of $53,657.00 was made . It is true that the Fifth Circuit has held that in certain circumstances a plaintiff may submit evidence after removal that clarifies, rather than amends, the damages she is seeking. *See Asociacion Nacional de Pescadores v. Dow Quimica*, 988 F.2d 559, 565 (5th Cir. 1993) (hereinafter "*ANPAC*"), *reh'g denied*, 5 F.3d 530 (5th Cir. 1993), *cert. denied*, (510 U.S. 1041 (1994), *abrogated on other grounds by Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211 (5th Cir. 1998); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1411-12 (5th Cir. 1995), *cert. denied* , 516 U.S. 865 (1995). However, the court subsequently emphasized that its decision in *ANPAC* was "very narrowly drawn and circumscribed" and was an "unusual case." *Marcel v. Pool Co.*, 5 F.3d 81, 84–85 (5th Cir. 1993).[5] Indeed, the court in *Marcel* stated that "[n]othing in *ANPAC* suggests that stipulations or affidavits - from the plaintiffs, their attorneys, or otherwise - always or even

[5] In *ANPAC*, the court considered an affidavit submitted by the plaintiffs contesting removal in which they swore that the amount in controversy requirement was not met because the complaint did not specify an amount of damages, it was not otherwise facially apparent that the damages were likely to exceed the jurisdictional minimum, and defendants' notice of removal contained only a conclusory statement not based on direct knowledge. *ANPAC*, 988 F.2d at 566.

usually should be given effect to defeat removal." *Id.* at 85. The State Court Complaint and stipulations are not relevant to the time period of when this lawsuit was filed and will therefore not be considered by the court. For the same reason, the court also will not consider Mr. Gunn's letter of September 19, 2006.[6] *See Greenberg*, 134 F.3d at 1252-54 (holding that consideration of a subsequently-filed state court complaint under such circumstances constitutes "error as a matter of law."). However, the court will consider the affidavit of Sun Life's attorney, Richard G. Norris, II, submitted in opposition to the motion to dismiss, as it is relevant to the time period that pre-dates the filing of the complaint in the instant action and, to the extent there is ambiguity as to the amount in controversy, the affidavit seeks to clarify such ambiguity. Mr. Norris avers that after being hired by Sun Life, he spoke with Mr. Gunn who made a settlement offer of $50,000.00 and stated that if Sun Life did not settle the matter immediately, Mrs. Fairley would file suit against Sun Life seeking, *inter alia*, punitive damages and attorneys' fees. Mr. Gunn did not state that Mrs. Fairley was limiting her claim in any potential litigation to the proposed settlement amount. Based on this threat, Sun Life believed, in good faith, that Mrs. Fairley would file a bad faith suit and seek damages in an amount over and beyond the jurisdictional limits of this court, which is why it filed the instant declaratory judgment action.

Thus, based on the allegations of the complaint and the complaint's prayer for relief, as well as appropriate summary-judgment type evidence, the court finds that the claim in the case *sub judice* is likely to exceed the jurisdictional minimum of $75,000.00. Accordingly, since Sun Life has established that the amount in controversy is likely to exceed $75,000.00, jurisdiction

---

[6] At any rate, this letter would not help Mrs. Fairley, as the settlement offer does not establish the amount in controversy in the instant action, but merely reflects the amount for which Mrs. Fairley was willing to settle in lieu of filing a lawsuit.

here will lie unless Mrs. Fairley can prove to a "legal certainty" that she cannot recover more than $75,000.00.[7] *De Aguilar*, 47 F.3d at 1411-12. Mrs. Fairley has failed to meet that burden. Accordingly, as Sun Life has met its burden of establishing this court's subject matter jurisdiction by a preponderance of the evidence, and Mrs. Fairley has failed to establish to a legal certainty that her claims against Sun Life do not exceed the jurisdictional minimum, Mrs. Fairley's motion to dismiss should be denied.

IT IS, THEREFORE, ORDERED AND ADJUDGED that defendant's motion to dismiss [**# 4**] is denied.

SO ORDERED and ADJUDGED on this, the 24th day of April, 2007.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE

---

[7] One way this burden can be met is by citing to a state law prohibiting recovery of damages exceeding those requested in the *ad damnum* clause of the complaint and prohibiting amendment of the complaint's initial *ad damnum* clause. *See De Aguilar*, 47 F.3d at 1412 & n.10. Mrs. Fairley has not cited to any such Mississippi law, nor is the court aware of any.